UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RANDALL RE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | 07 C 1264 |
| vs. | ) | |
| | ) | 02 CR 448-2 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the petition of Randall Re ("Re") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the petition is granted in part and denied in part.

## BACKGROUND

In 1997, Re was a resident of the Northern District of Illinois and owned a warehouse in Englewood, Florida. Re wanted to sell the warehouse and a potential buyer surfaced. After several negotiations, the potential buyer decided not to buy Re's property. Instead, the potential buyer leased a portion of an adjacent warehouse owned by Gregory Leach ("Leach"). Re wanted Leach to evict the new tenant so that the tenant could purchase Re's property. Re decided to send Anthony Calabrese ("Calabrese") and another individual to Florida to deliver a "message" to Leach. Calabrese and the other

individual assaulted Leach and beat him with a baseball bat. Leach sustained multiple injuries. In 2002, Re was charged in a two-count indictment for conspiracy to commit extortion in violation of 18 U.S.C. § 1951 (the "Hobbs Act") and conspiracy to travel to commit extortion in violation of 18 U.S.C. § 1952.

Around the time of his indictment, Re and his wife were involved in a divorce proceeding in DuPage County. In July 2002, Re was found in contempt of a domestic relations court order for failure to satisfy various financial obligations relating to the dissolution of his marriage and to his child support obligations. During a July 2002 hearing, the domestic relations court ordered Re to sell another warehouse he owned in Woodridge, Illinois (the "Woodridge warehouse") to satisfy his long-standing financial obligations. The court also indicated that the proceeds of the sale were to be held in an escrow account managed by Re's attorney Terry O'Donnell ("O'Donnell"). In August 2002, Re was arrested for failure to satisfy his debts and was held in civil custody at the DuPage County jail. While in custody, Re allowed O'Donnell to take over his pending federal criminal trial, even though Re was already represented by Sergio Rodriguez ("Rodriguez"), a federal defender. In addition to O'Donnell, Re also hired Richard Beuke ("Beuke") to represent him.

Re's jury trial was scheduled to begin on October 28, 2002. On October 22, 2002, Beuke and O'Donnell filed a motion seeking leave to substitute as counsel for Re and

for the trial scheduled to begin on October 28, 2002, to be continued. On October 24, 2002, the Court granted the first motion but denied the second. On October 28, 2002, the jury trial commenced and Rodriguez filed a motion to withdraw. The trial court granted the motion and the federal defender was effectively substituted by Beuke and O'Donnell. On November 1, 2002, the jury entered a verdict of guilty on both conspiracy counts and on April 15, 2003, this Court sentenced Re to eighty seven and sixty months' incarceration on each count, both sentences to run concurrently. Re was also ordered to pay a fine of $12,500.

Three weeks after Re's November 1, 2002 conviction, on November 22, 2002, the Woodridge warehouse was finally sold and the proceeds of the sale were placed in an escrow account that O'Donnell had opened. Unbeknownst to Re, O'Donnell embezzled the proceeds of the sale.

Unaware of the embezzlement, Re appealed his conviction and sentence to the Seventh Circuit where he was represented by John Moran. On March 22, 2005, the Seventh Circuit affirmed both convictions but ordered a limited remand to determine whether, in the aftermath of *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), we would have imposed the same sentence had we known that the Sentencing Guidelines were advisory. This Court concluded that the same sentences would have been imposed and the Seventh Circuit

ultimately affirmed the sentence. Re petitioned the Supreme Court for a writ of certiorari which was denied on April 3, 2006.

Re eventually discovered that O'Donnell had embezzled the funds held in the escrow account. O'Donnell was disbarred, investigated by the Federal Bureau of Investigation ("FBI"), and ultimately committed suicide. On March 6, 2007, Re filed a *pro se* habeas petition under 28 U.S.C. § 2255 asserting, among other claims, an ineffective assistance of counsel claim. On November 15, 2007, we denied Re's petition and Re appealed. On February 9, 2009, the Seventh Circuit granted Re's request for a certificate of appealability and appointed counsel to assist Re with his appeal. On July 16, 2009, the appointed counsel filed a motion seeking relief from the final order and judgment pursuant to Federal Rule of Civil Procedure 60(b). On August 4, 2009, we granted Re's motion and allowed him to amend his Section 2255 petition. On August 14, 2009, the Seventh Circuit remanded the matter to this Court pursuant to Circuit Rule 57. Re has now filed an amended petition to vacate, set aside, or correct his sentence pursuant to Section 2255. In his petition, Re asserts that his Sixth Amendment right to counsel was violated during his trial, his sentencing, and on appeal.

## LEGAL STANDARD

Section 2255 permits a prisoner to ask the sentencing court to vacate, set aside, or correct a sentence after direct review is completed on the grounds that the sentence

was imposed in violation of the Constitution or laws of the United States. Such collateral relief is only available where the sentence involved a constitutional error or resulted in a complete miscarriage of justice. *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994). In evaluating a Section 2255 petition, the district court must draw all reasonable inferences in favor of the government. *Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992).

**DISCUSSION**

Re's petition advances three grounds for relief: (1) Re's sentence is illegal because his attorneys rendered ineffective assistance during the trial proceedings; (2) Re's sentence is illegal because O'Donnell was conflicted during the sentencing; and (3) Re's appellate counsel rendered ineffective assistance because he failed to raise an important legal argument on appeal. We examine each ground in turn.

**I.     Ineffective Assistance Of Counsel During Trial**

Re complains that he was denied his Sixth Amendment right to counsel during the trial proceedings because his attorneys did not have adequate time to prepare and because O'Donnell was burdened with a conflict of interest. We successively address these arguments.

A.      Counsels' Preparedness For Trial

Re first contends that his attorneys were unprepared because they only had four days to prepare for trial. According to Re, on October 24, 2002, his attorneys asked for a continuance stating that they needed more time to review the discovery material and prepare for trial. Because this Court denied the continuance, Re argues that the Court left him without effective assistance of counsel. In ruling on a motion for a continuance, a court considers, among other factors, the amount of time available for preparation and the availability of discovery from the prosecution. *United States v. Crowder*, 588 F.3d 929, 936 (7th Cir. 2009). The court need not make a rigid recitation and analysis of each factor before a continuance is denied and may place various degrees of importance on each factor. *United States v. Williams*, 576 F.3d 385, 389 (7th Cir. 2009). Here, Re's argument fails for several reasons.

First, Beuke and O'Donnell were not Re's only attorneys over the course of his criminal trial. From the day Re was arrested in May 2002 to the day Beuke and O'Donnell filed their appearances in October 2002, Re had been represented by three other lawyers: Patrick Tuite, Carl Walsh, and Rodriguez. Beuke and O'Donnell were Re's fourth and fifth attorneys. Instead of remaining with Rodriguez, who was fully prepared and ready to proceed, Re elected to move on with two newcomers. On that basis alone, the Court can conclude that Re waived his lack of preparation argument.

Moreover, Re's statement that his lawyers' preparation was insufficient because it was limited to four days is grossly inaccurate. On October 28, 2002, the day trial was scheduled to begin, the Court held a hearing addressing Rodriguez's motion to withdraw. The purpose of the hearing was to evaluate the appropriateness of substituting O'Donnell and Beuke. During the hearing, Rodriguez indicated that Beuke and O'Donnell had been involved in this matter as early as October 12, 2002, that is, *sixteen* days before trial. Rodriguez also indicated that all discovery material had been forwarded to Re while he was in jail, that Re's newly-retained attorneys had gone through the discovery material, and that they all had discussed Re's case. Rodriguez further stated that "he had done all in his power to help in the preparation for the trial and Mr. Beuke and Mr. O'Donnell [were] prepared to proceed." Re, who was present during the hearing, assured the Court "that he had no qualms, in terms of preparation and knowledge and all that goes with defending a criminal case" and that Beuke and O'Donnell "were as much or more [prepared] as Sergio [Rodriguez] had been."

Beuke's affidavit corroborates these statements. In his affidavit, Beuke indicates that O'Donnell and himself had been involved in the preparation of Re's case well before deciding to represent Re in the criminal trial and before filing the motion for a continuance, which was filed on October 22, 2002, that is, *six* days before trial. Beuke also states that through Rodriguez and Joseph Lopez, Calabrese's attorney, they

obtained all the documents the Government had produced and spent considerable time reviewing them. Beuke further states that they traveled to Florida, inspected Re's warehouse and contacted and interviewed several witnesses regarding the warehouse transaction. Beuke concludes that "because of the preparation that Mr. O'Donnell and I had done prior to the filing of the motion to substitute as counsel, we were prepared to proceed to trial on October 28, 2002."

In sum, the record before us discloses that Beuke and O'Donnell were Re's fourth and fifth attorneys, that this Court held a hearing specifically designed to assess the preparedness of counsel, that the discovery material was readily and promptly made available to Re's attorneys, and that Re's attorneys admit they had sufficient time to conduct pre-trial investigation and be prepared for trial. In light of this evidence, we conclude that this Court's denial of a continuance was justified because Beuke and O'Donnell were fully prepared for trial.

The unpreparedness of counsel argument fails for an additional reason: Re does not show how an actual prejudice resulted from the Court's denial of a continuance. To prevail on his ineffective assistance of counsel claim, Re must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Here, Re relies on the conclusory allegation that there was insufficient time to

prepare for trial without specifying which new defense or new questions his attorneys could have raised, or what trial strategy and realistic investigative steps should have been undertaken had the continuance been granted. As the Government correctly points out, if there was some exculpatory evidence or some other viable trial strategy, Rodriguez, who was thoroughly prepared, would have informed Re's attorneys. "An ineffective assistance of counsel claim cannot rest upon counsel's alleged failure to engage in a scavenger hunt for potentially exculpatory information with no detailed instruction on what information may be or where it might be found." *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002). Because Re cannot show that he suffered actual prejudice from this Court's denial of a continuance, his argument fails.

**B.      O'Donnell's Conflict Of Interest**

Re's argument of ineffective assistance of counsel during trial due to a conflict of interest is threefold. Re first argues that his counsel labored under an actual conflict of interest giving rise to a *per se* violation of his Sixth Amendment. Second, Re contends that O'Donnell's impermissible conflict of interest adversely impacted his performance during trial. Finally, Re argues that should we conclude that his attorney's conflict did not impact his performance, we should nonetheless vacate his sentence because O'Donnell's potential conflict of interest prejudiced Re's defense. For clarity purposes, we will first address the appropriate standard of review.

A.     **Standard Of Review**

There are two different ways for a petitioner to establish an ineffective assistance of counsel claim based on a conflict of interest between him and his attorney. *United States v. Stoia*, 109 F.3d 392, 395 (7th Cir. 1997). First, a petitioner may proceed under the traditional *Strickland* test. Under *Strickland*, a petitioner must demonstrate that (1) his attorney had a potential conflict of interest and (2) that this potential conflict caused him prejudice. *Strickland,* 466 U.S. at 687. In other respects, the defendant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id*. at 694. "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

Alternatively, the petitioner may proceed under *Cuyler v. Sullivan*, 446 U.S. 335 (1980). Under the *Cuyler* test, a court may presume prejudice when the petitioner demonstrates that an actual conflict of interest adversely impacted his lawyer's performance. *United States v. Wallace*, 276 F.3d 360, 367 (7th Cir. 2002). The second component of the *Cuyler* standard places a lighter burden on the petitioner than *Strickland* because establishing an "adverse effect" is significantly easier than showing "prejudice." *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004). To give Re the

maximum benefit of the law, we will examine Re's ineffective assistance of counsel claim under the more lenient standard in *Cuyler*.

**B.**     ***Per Se* Violation Of Petitioner's Sixth Amendment**

Re first takes the position that O'Donnell's actual commission of a crime against him during the course of his representation is enough, by itself, to establish a *per se* violation of his Sixth Amendment. In other words, Re asks that we automatically reverse his sentence without Re having to show that the conflict adversely affected O'Donnell's performance, as required by *Cuyler*. A presumption of prejudice is appropriate where counsel labored on behalf of the defendant while harboring a conflict of interest. *McDowell v. Kingston*, 497 F.3d 757, 764 (7th Cir. 2007). However, a court will presume prejudice only if the defendant demonstrates that counsel had an actual conflicting interest *and* that the conflict adversely impacted counsel's representation. *Wallace*, 276 F.3d at 367. The petitioner must demonstrate a link between the conflict of interest and the ineffective assistance of counsel. *Id*. at 366. Therefore, the existence of a conflict of interest, alone, does not absolve the petitioner from establishing that the attorney's criminal activity compromised petitioner's defense or adversely affected counsel's performance.

Re relies on two cases from the Second Circuit, *Solina v. United States*, 709 F.2d 160 (2d Cir. 1983) and *United States v. Cancilla*, 725 F.2d 867 (2d Cir. 1984), for the

proposition that O'Donnell's assistance was *per se* ineffective. However, the Government correctly indicates that these decisions are inapplicable to Re's case. First, the Seventh Circuit has specifically rejected the *Cancilla* rule in *Cerro v. United States*, 872 F.2d 780 (7th Cir. 1989). Second, the Second Circuit has held that the *per se* rule only applies in "two limited circumstances: where defendant's counsel was unlicensed, and when the attorney has engaged in the defendant's crimes." *Winkler v. Keane*, 7 F.3d 304 (2d Cir. 2003). Re's allegations do not fall into either one of those categories. Accordingly, the *per se* rule is inapplicable. To establish his claim, Re must proceed under the *Cuyler* test.

C.  **The *Cuyler* Test**

Re argues that O'Donnell's embezzlement of Re's trust account created an actual conflict of interest that collided with Re's interest in effective representation during his criminal trial. An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney is faced with "a choice between advancing his own interests above those of his client." *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004). In the instant matter, Re fails to demonstrate that O'Donnell harbored a conflict of interest during the trial proceedings. As the Government correctly points out, the timing of the relevant transactions is important. Re's criminal trial commenced on October 28, 2002, and was completed by November

1, 2002. On November 7, 2002, the DuPage domestic relations court ordered that the proceeds from the sale of the Woodridge warehouse be held in O'Donnell's escrow account pending satisfaction of all child support obligations. The property was effectively sold on November 22, 2002, long after the jury had rendered a verdict of guilt. Because the transactions pertaining to the sale of the warehouse occurred after Re was found guilty, they cannot support a claim that O'Donnell was conflicted during the criminal trial.[1] Accordingly, Re fails to prove that O'Donnell had an actual conflict of interest during Re's representation at trial.

Similarly, Re fails to establish that the conflict had an "adverse effect" on O'Donnell's performance during Re's trial. Although "the adverse effect prong of the *Cuyler* test analyzes how a *particular* lawyer's actual conflict of interest may have adversely affected his performance" there is no basis to overturn a defendant's conviction where a defendant is adequately represented by other lawyers and the defendant's overall representation is not impaired by any actual conflict. *Stoia v. United States*, 109 F.3d 392, 398 (7th Cir. 1997).

---

[1] Although Re maintains that it was part of O'Donnell's plan to embezzle the proceeds from the sale because O'Donnell had consistently been embezzling his clients' money and because the sale was originally scheduled to take place on October 25, 2002, and was finally pushed back to November 22, 2002, he offers no evidence in support of these assertions. We cannot infer, without any evidence, that such a remote possibility - that O'Donnell was planning to embezzle Re's proceeds of the sale - existed.

Here, although Re was represented by both attorneys, Beuke was the lead counsel, not O'Donnell. O'Donnell had a very limited role at trial. The nature of O'Donnell's role at trial was clearly contemplated by his preliminary filings in the district court where he disclosed that he was not a member of the trial bar. Beuke's affidavit also indicates that O'Donnell was not admitted to the trial bar of the Northern District of Illinois. As Beuke's affidavit reveals, because O'Donnell was not admitted to the trial bar of the Northern District of Illinois and did not have extensive federal court experience, Beuke was integrally involved in all aspects of the preparation and division of trial responsibilities. During trial, Beuke gave the opening statement and closing argument. O'Donnell's contribution was confined to the cross-examination of a peripheral government witness. Also, in anticipation of the sentencing hearing, Beuke filed objections to the pre-sentence report and a motion seeking a downward departure based on Re's criminal history and involvement in the offense. Although Re asserts that O'Donnell was carrying out the lion's share of work, he offers no evidentiary support for this contention. Rather, the record supports a conclusion that Beuke was the lead counsel and that he was exclusively handling Re's defense and representation, that O'Donnell had a secondary role, and that Re received a conflict-free representation from Beuke at all critical stages of the criminal process. As a result, any alleged conflict

of interest that may have adversely impacted O'Donnell's performance is neutralized by Beuke's competent and conflict-free representation.

For all the abovementioned reasons, we conclude that the trial proceedings leading to Re's conviction are unassailable. Accordingly, Re's claim of ineffective assistance of counsel at trial is denied.

## II. Ineffective Assistance Of Counsel O'Donnell During Sentencing

Re also contests this Court's injury enhancements. According to Re, O'Donnell failed to challenge the pre-sentence report's erroneous conclusions that Leach had sustained a broken rib and a neck injury. Specifically, Re maintains that the medical reports and x-rays did not reveal any fractured ribs or neck injury and thus the three-level enhancement was excessive. Under the Sentencing Guidelines, "serious bodily injury" is defined as an injury "requiring medical intervention such as surgery [or] hospitalization [.]" U.S.S.G. § 1B1.1. A serious bodily injury carries a four-level increase. U.S.S.G. § 2B3.2(a)(4)(D). In the instant matter, one of the emergency room records indicates that Leach was diagnosed with a fractured rib. Another medical record reveals that two weeks later Leach was examined by a second doctor who also concluded that Leach had a fractured rib. The evidence presented at trial demonstrates that Leach suffered a broken rib which required hospitalization. In addition, Re does not explain how O'Donnell's conflict of interest prevented him from challenging the

medical records. Thus, the three-level enhancement is entirely appropriate and we refuse to grant habeas relief on this basis.

Re next argues that, during the sentencing, O'Donnell ignored his client's best interests because he failed to challenge the financial information contained in the pre-sentence report. Re contends that his counsel's conflict resulted in his failure to object to the financial calculations in the pre-sentence report, his failure to confess his wrongdoings to the Court, and his general passivity in allowing the Court to impose a $12,500 fine. Under the *Cuyler* inquiry, to prevail on his Sixth Amendment claim, Re must first show that O'Donnell had an actual conflict of interest during Re's sentencing. *Wallace*, 276 F.3d at 367. The Government does not contest that by the time Re was sentenced in April 2003, O'Donnell had failed to transfer the appropriate portion of the proceeds from the sale to Re. Further, the FBI investigation report is replete with inculpatory statements made by O'Donnell that he had actually embezzled Re's money. Therefore, Re has made a satisfactory showing that, in April 2003, O'Donnell harbored an actual conflict of interest.

With respect to the second element of the test, Re must prove that the conflict of interest adversely impacted O'Donnell's representation. *Id*. An adverse effect occurs when the attorney's conflict of interest causes a "lapse in representation contrary to defendant's interests." *Stoia*, 22 F.3d at 771. A petitioner can demonstrate an adverse

effect by showing that there is a reasonable likelihood that his counsel's performance would have been different had there been no conflict of interest. *Hall*, 371 F.3d at 974. Here, Re has put forth evidence of a reasonable likelihood that O'Donnell's actual conflict of interest caused a lapse in his representation of Re during the sentencing proceedings. Before sentencing, Re provided the Probation Office with a detailed financial statement indicating that he was due to receive a portion of the proceeds from the sale of the Woodridge warehouse. According to the pre-sentence report, the selling of the warehouse would have yielded approximately $225,000. Following satisfaction of Re's child support payments and several other expenses, including attorneys' fees, Re would have received between $30,000 and $40,000 from the sale. Based on that information, the Probation Office concluded that Re had an "immediate ability to pay a fine through the remaining proceeds of the real estate sale" and recommended a criminal fine of $12,500. Because O'Donnell failed, during the sentencing proceedings, to object to the financial calculations of the pre-sentence report and to confess his wrongdoings regarding the embezzlement, we conclude that Re has established that O'Donnell's conflict of interest adversely impacted Re's representation. Accordingly, we grant Re habeas relief as to the matter of sentencing and vacate his sentence.

### III. Ineffective Assistance Of Appellate Counsel

Re next argues that he was deprived of his Sixth Amendment right to effective assistance of appellate counsel when his attorney failed to raise a significant legal issue that was considered in *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003). To establish ineffectiveness, Re must demonstrate that his appellate counsel's performance was deficient and that the deficiency prejudiced him. *Strickland*, 466 U.S. at 687. Appellate counsel's performance is deficient when counsel fails to appeal an issue that is significant, obvious, and clearly stronger than the ones that were raised. *Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008).

In *Scheidler*, the Supreme Court construed the extortion provision under the Hobbs Act to "require not only the deprivation but also the acquisition of property." *Id*. at 404. In light of *Scheidler*, Re contends that the Government had to demonstrate that Re obtained Leach's property to prove him guilty of extortion. Instead, Re stresses that the prosecution's argument at trial was that Re conspired to *evict* the tenant from the warehouse, not to gain possession of it. Because his attorney failed to raise that issue on appeal, Re asks this Court to vacate his sentence. Re, however, ignores that *Scheidler* specifically indicated that "liability might be based on obtaining something as intangible as another's right to exercise exclusive control over the use of a party's business assets." *Id*. at 402. The Supreme Court carefully excluded from its holding the property interests

protected in *United States v. Tropiano*, 418 F.2d 1069 (2d Cir. 1969). *Id*. at n.6. In *Tropiano*, the Second Circuit determined that threats of physical violence to persuade the owners of a competing trash removal company to refrain from soliciting customers violated the Hobbs Act. Similarly, Re was found guilty of conspiring to administer physical violence against Leach to prevent him from interfering with Re's business, thereby depriving Leach of his right to exercise exclusive control over his assets. Under *Scheidler*, that is a basis for liability.

Re's argument that he did not "obtain" any property is further inapposite because forcing an "owner to surrender control of such an intangible right is an appropriation of control embraced by the term 'obtaining.'" *Scheidler*, 537 U.S. at 412 (Stevens, J., dissenting). Accordingly, appellate counsel cannot be faulted for ignoring an insignificant legal issue. Re's claim of ineffective assistance of appellate counsel does not warrant relief under Section 2255.

**CONCLUSION**

For the reasons stated herein, Petitioner's motion to vacate, set aside, or correct his sentence is granted in part and denied in part.

IT IS THEREFORE ORDERED that:

(1) Petitioner's motion to vacate, set aside, or correct his sentence is granted in part and denied in part;

(2) Petitioner's motion for relief other than the vacation of his sentence is denied in all other respects;

(3) Petitioner's sentencing proceedings are hereby vacated; and

(4) A status hearing will be held on June 21, 2011 at 9:30 a.m.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:  May 24, 2011